UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| RAYMOND HILDEBRAND, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. CIV-24-1333-R |
| ) | |
| FRANK KENDALL, et al., ) | |
| ) | |
| Defendants. ) | |

## ORDER

Before the Court is Defendants Secretary Frank Kendall and United States Defense Department's Motion to Dismiss [Doc. No. 17]. Plaintiffs Raymond Hildebrand and Taylor Hildebrand responded [Doc. No. 18], and Defendants replied [Doc. No. 19]. The matter is now at issue. For the reasons that follow, Defendants' Motion is GRANTED.

### INTRODUCTION

During the COVID-19 pandemic, President Joe Biden signed an executive order requiring all federal-sector employees to be vaccinated against COVID-19. Exec. Order. No. 14,043, 86 Fed. Reg. 50,989 (Sep. 9, 2021). The executive order allowed exemptions as required by law. *Id*. About four months after the executive order went into effect, it was enjoined by a federal district court. *Feds for Med. Freedom v. Biden*, 581 F.Supp.3d 826, 829 (S.D. Tex. 2022). President Biden later rescinded the executive order. Exec. Order No. 14,099, 88 Fed. Reg. 30,891 (May 9, 2023).

1

## BACKGROUND[1]

Plaintiffs are civilian federal-sector employees at Tinker Air Force Base [Doc. No. 1, ¶ 1]. Due to their sincere, deeply held religious beliefs, they sought a religious exemption from the vaccine mandate. *Id*. ¶ 23. While their request was pending, Plaintiffs were required to submit to weekly COVID-19 tests as a reasonable accommodation. *Id*. ¶¶ 24-25. The vaccine mandate was enjoined before their religious exemption request was adjudicated. *Id*. ¶ 26. Plaintiffs were still required to submit to weekly COVID-19 tests or face termination. *Id*. ¶ 44. Notably, vaccinated federal-sector employees and unvaccinated federal-sector employees that had received medical exemptions were not required to submit to weekly tests. *Id*. ¶¶ 45-47. The only group of federal-sector employees required to submit to weekly COVID-19 tests after the vaccine mandate was enjoined were those that were excepted from the mandate on religious grounds. *Id*. ¶¶ 48-49.

Plaintiffs sued Defendants in United States District Court for the District of Columbia, alleging religious discrimination, disparate treatment, and retaliation in violation of Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e *et seq*., and the D.C. Human Rights Act. *Id*. at pp. 12-23. Defendants moved to dismiss the Complaint due to improper venue and failure to state a claim for which relief may be granted [Doc. No. 8]. The D.C. District Court instead transferred the action to the United States District Court

---

[1] When reviewing a motion to dismiss brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court "take[s] the facts in the complaint as true…and [] views such facts in the light most favorable to the plaintiff[.]" *Knellinger v. Young*, 134 F.4th 1034, 1042 (10th Cir. 2025) (internal citations and quotation marks omitted).

for the Western District of Oklahoma [Doc. No. 14]. Defendants renewed their motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Doc. No. 17.

## LEGAL STANDARD

Dismissal under Rule 12(b)(6) is proper when a complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a Rule 12(b)(6) motion, the complaint 'must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Brown v. City of Tulsa*, 124 F.4th 1251, 1263 (10th Cir. 2025) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). And while the Court "must accept the truth of all properly alleged facts and draw all reasonable inference in the plaintiff's favor, the plaintiff still 'must nudge the claim across the line from conceivable or speculative to plausible.'" *Id*. (quoting *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021)). "Mere 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action' will not suffice." *Id*. (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

## DISCUSSION

Personnel actions affecting federal-sector employees must be made "free from any discrimination based on…religion." 42 U.S.C. § 2000e-16(a).

**A. Plaintiffs failed to state a plausible claim of religious discrimination or disparate treatment under Title VII.**

Plaintiffs claim that Defendants violated Title VII by discriminating against them because of their religion when they were required to submit to COVID-19 tests after the

vaccine mandate was enjoined while other unvaccinated federal-sector employees were not.

To defeat Defendants' Motion, Plaintiffs "must plausibly allege these elements: (1) '[they are] a member of a protected class,' (2) '[they] suffered an adverse employment action,' and (3) 'the challenged action occurred under circumstances giving rise to an inference of discrimination.'" *McNellis v. Douglas Cty. Sch. Dist.*, 116 F.4th 1122, 1139 (10th Cir. 2024) (quoting *Bennett v. Windstream Communications, Inc.*, 792 F.3d 1261, 1266 (10th Cir. 2015)). Defendants contend that the continued COVID-19 testing requirement did not constitute a personnel action under § 2000e-16(a). The Court agrees.

1. **Title VII claims brought against private employers through § 2000e-2(a)(1) are subject to a different standard than claims brought against the federal government through § 2000e-16(a).**

At the outset, the Court must decide what standard governs the determination of an adverse employment action for a claim brought by a federal-sector employee. Plaintiffs contend that the standard governing claims brought by private employees applies with equal force to claims brought by federal employees. Defendants argue that the text and structure of § 2000e requires different standards for private and federal-sector claims. The Court finds the Defendants' position in closer harmony to the text of the relevant statutory provisions.

Plaintiffs cite *Muldrow v. City of St. Louis*, 601 U.S. 346 (2024) as establishing the standard they must meet to plead an adverse employment action. In *Muldrow*, the Supreme Court—interpreting § 2000e-2(a)(1)—abrogated the standard articulated by several circuits that required a plaintiff to show that an injury was sufficiently significant to

4

constitute an adverse employment action. *Muldrow*, 601 U.S. at 350; *see also Green v. Okla. Gas & Elec. Co.*, No. CIV-24-456-JD, 2025 WL 793575, at *6 (W.D. Okla. Mar. 12, 2025)). Focusing on the text of § 2000e-2(a)(1), the Court held that a Title VII plaintiff need only show "**some harm** respecting an identifiable term or condition of employment." *Id*. at 355 (emphasis added). It is Plaintiffs' view that this standard applies with equal force to claims by federal-sector employees asserted under § 2000e-16(a)—that is, that a claimant under § 2000e-16(a) need only show "some harm" to plausibly allege an adverse employment action.

Defendants disagree. They contend that the *Muldrow* standard is inapposite because § 2000e-2(a)(1) does not apply to federal-sector employees. A survey of the relevant statutory provisions, as well as the Supreme Court's decision in *Babb v. Wilkie*, 589 U.S. 399 (2020) supports Defendants' position.

Starting with the private employer provision analyzed by the Supreme Court in *Muldrow*, § 2000e-2(a)(1) reads:

> It shall be an unlawful employment practice for an **employer** to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]

42 U.S.C. § 2000e-2(a)(1) (emphasis added).

However, the definitions section of § 2000e explicitly excludes the United States as an "employer":

> The term **"employer"** means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year,

5

and any agent of such a person, but such term **does not include (1) the United States**, a corporation wholly owned by the Government of the United States, an Indian tribe, or any department or agency of the District of Columbia subject by statute to procedures of the competitive services (as defined in section 2102 of Title 5), or (2) a bona fide private membership club (other than a labor organization) which is exempt from taxation under section 501(c) of Title 26, except that during the first year after March 24, 1972, persons having fewer than twenty-five employees (and their agents) shall not be considered employers.

42 U.S.C. § 2000e(b) (emphasis added).

So from the plain text, § 2000e-2(a)(1) applies to "employers," and § 2000e(b) specifically excludes the federal government from the definition of "employer." Accordingly, § 2000e-2(a)(1) does not apply to claims brought by federal-sector employees. Those claims are instead governed by § 2000e-16(a), which reads:

All **personnel actions** affecting employees or applicants for employment (except with regard to aliens employed outside the limits of the United States) **in military departments** as defined in section 102 of Title 5, in executive agencies as defined in section 105 of Title 5 (including employees and applicants for employment who are paid from nonappropriated funds), in the United States Postal Service and the Postal Regulatory Commission, in those units of the Government of the District of Columbia having positions in the competitive service, and in those units of the judicial branch of the Federal Government having positions in the competitive service, in the Smithsonian Institution, and in the Government Publishing Office, the Government Accountability Office, and the Library of Congress shall be made free from any discrimination based on race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-16(a) (emphasis added).

The term "personnel actions" is not defined. Defendants argue that the Court should follow the Supreme Court's approach in *Babb v. Wilkie*, 589 U.S. 399 (2020), and later the Tenth Circuit's approach in *Nelson v. DeJoy*, No. 23-1227, 2024 WL 3507723, at *4-5 (10th

6

Cir. July 23, 2024) (unpublished), and import the definition of "personnel actions" from the Civil Service Reform Act of 1978.

In *Babb*, the Supreme Court analyzed a claim brought by a federal-sector employee against the Department of Veterans Affairs for age discrimination under the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. § 633a(a). *Babb*, 589 U.S. at 402. The Court had to define the term "personnel actions" which was not defined in the ADEA. *Id*. at 405. To do so, the Court referred to the Civil Service Reform Act of 1978, which sets forth several categories of decisions that qualify as "personnel actions." *Id*. (citing 5 U.S.C. § 2302(a)(2)(A)(i)-(xii)). In adopting the CSRA's definition of "personnel actions," the Court observed that the CSRA "governs federal employment" and that the "interpretation is consistent with the term's meaning in general usage, and we assume that it has the same meaning under the ADEA." *Id*.

In *Nelson*, the Tenth Circuit considered the effect of *Babb* on Title VII claims brought by federal-sector employees. *Nelson*, 2024 WL 3507723, at *4. There, neither of the parties argued for a distinction between the term "adverse employment action" as interpreted through § 2000e-2(a)(1), and "personnel actions" as stated in § 2000e-16(a). *Id*. As such, the Tenth Circuit analyzed both issues, first finding that the plaintiff did not plausibly allege an adverse employment action, and second—after importing the CSRA's definition of "personnel actions"—finding that the plaintiff did not sufficiently plead a personnel action. *Id*. at *5.

Here, unlike in *Nelson*, parties expressly dispute the proper standard for a federal-sector Title VII claim. This Court—like the Tenth Circuit in *Nelson*—will assume that the

7

term "personnel actions" "'has the same meaning under' Title VII" that it does under the CSRA. *Id*. (quoting *Babb*, 589 U.S. at 405). So because Plaintiffs are federal-sector employees whose claims arise under § 2000e-16(a), they must plausibly allege that they suffered an adverse "personnel action" as defined by the CSRA.

### i. Being subjected to weekly COVID-19 tests is not a "personnel action."

The CSRA defines "personnel actions" as the following:

(i) an appointment;

(ii) a promotion;

(iii) an action under chapter 75 of this title or other disciplinary or corrective action;

(iv) a detail, transfer, or reassignment;

(v) a reinstatement;

(vi) a restoration;

(vii) a reemployment;

(viii) a performance evaluation under chapter 43 of this title or under title 38;

(ix) a decision concerning pay, benefits, or awards, or concerning education or training if the education or training may reasonably be expected to lead to an appointment, promotion, performance evaluation, or other action described in this subparagraph;

(x) a decision to order psychiatric testing or examination;

(xi) the implementation or enforcement of any nondisclosure policy, form, or agreement; and

(xii) any other significant change in duties, responsibilities, or working conditions[.]

5 U.S.C. § 2302(a)(2)(A)(i)-(xii).

From the list above, only the residual clause is applicable to Plaintiffs' claim. Specifically, Plaintiffs challenge the legality of their working conditions. The dispositive issue then is whether being subjected to weekly COVID-19 tests is a significant change in working conditions. The Court finds that it is not.

Here, Plaintiffs did not take issue with weekly testing requirement when the vaccine mandate was in place. Doc. No. 1, ¶ 25. In fact, they claim that they "were and remain able to perform the essential functions of their jobs and performed all duties in full satisfaction of the job performance standards with or without reasonable accommodation." *Id*. ¶ 59. And still, Plaintiffs' grievance is not being subjected to weekly COVID-19 tests. It is that only those employees that were religiously excepted from the vaccine mandate were required to continue testing after the mandate was enjoined. But that argument—valid as it may be—does not answer the instant question. Instead, the inquiry is focused on the alleged personnel action itself. In that regard, being subjected to weekly COVID-19 tests under consequence of termination is certainly a change in working conditions. However, it is not a *significant* change in working conditions sufficient to qualify as a personnel action. Plaintiffs do not allege that there jobs were affected in any meaningful way. They were not transferred, terminated, docked pay, disciplined, demoted, denied promotions, forced to work different hours, bullied, hazed, or otherwise adversely affected by the policy. Their allegations are insufficient to give rise to an inference of significant change where there is no identifiable effect caused by the action.

Accordingly, because being subjected to weekly COVID-19 testing does not in itself constitute a significant change in working conditions. Plaintiffs' religious discrimination and disparate treatment claims are therefore dismissed.

**B. Plaintiffs fail to plausibly allege a claim for retaliation under Title VII.**

Plaintiffs also claim that Defendants violated Title VII by retaliating against them for requesting a reasonable accommodation. To prevail, Plaintiffs must "'plausibly allege (1) that [they] engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action.'" *McNellis*, 116 F.4th at 1142 (quoting *Reznik v. inContact, Inc.*, 18 F.4th 1257, 1260 (10th Cir. 2021)).

The Complaint is lacking any factual enhancement sufficient to plausibly allege a retaliation claim. For example, Plaintiffs claim that they were retaliated against for participating in the protected activity of requesting a religious accommodation. Missing is any allegation of a materially adverse action taken by Defendants in response to their request. And to the extent the alleged materially adverse action is the continued testing requirement after the injunction of the vaccine mandate, such a finding is foreclosed by the statement that "the sole basis for which Defendants required Plaintiffs to test on a weekly basis was Plaintiffs' religion and their membership in a protected class." Doc. No. 1, ¶ 52. There, Plaintiffs effectively concede that any materially adverse action was not causally connected to a protected activity, but rather to their status as a protected class.

Accordingly, Plaintiffs' Title VII retaliation claim is dismissed.

C. **Plaintiffs' claims brought pursuant to the D.C. Human Rights Act are likewise dismissed.**

Plaintiffs additionally brought claims under the D.C. Human Rights Act. However, "Title VII 'provides the exclusive judicial remedy for claims of discrimination in federal employment.'" *Mobley v. Donahoe*, 498 F. App'x 793, 796 (10th Cir. 2012) (quoting *Brown v. Gen. Services Admin.*, 425 U.S. 820, 835 (1976); also citing *Ford v. West*, 222 F.3d 767, 772-73 (10th Cir. 2000) and *Belhomme v. Widnall*, 127 F.3d 1214, 1217 (10th Cir. 1997)). Plaintiffs' D.C. Human Rights Act claims are therefore dismissed.

## CONCLUSION

Accordingly, Defendants' Motion to Dismiss is GRANTED.

IT IS SO ORDERED this 12th day of June, 2025.

_____
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE